**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Brayan Tamarit-Ferrer, | No. CV-25-04886-PHX-DWL (MTM) |
| Petitioner, | **ORDER** |
| v. | |
| David R Rivas, et al., | |
| Respondents. | |

In this action under § 2241, Petitioner challenges his immigration detention.  (Doc. 1.)  The Court ordered Respondents to show cause why the petition should not be granted.  (Doc. 5.)  The petition is now fully briefed.  (Docs. 7-8.)  For the reasons that follow, the Court will grant the petition and order that Petitioner be released or receive a bond redetermination hearing within seven days.

## I.    Background

On June 9, 2020, Petitioner, who is a citizen of Cuba, "initially came into immigration custody . . . while crossing the U.S.-Mexico border to seek asylum."  (Doc. 1 ¶¶ 1, 17.  *See also* Doc. 7-1 at 3 ¶ 6.)  Petitioner was initially placed in expedited removal proceedings and given a credible fear interview.  (Doc. 1 ¶¶ 1, 17; Doc. 7-1 at 3 ¶¶ 7-8.)

On June 24, 2020, Petitioner received a positive credible fear determination.  (Doc. 1 ¶¶ 1, 18; Doc. 7-1 at 3 ¶ 8.)  As a result, "the Department of Homeland Security vacated expedited removal and issued a Notice to Appear commencing removal proceedings under INA § 240."  (Doc. 1 ¶ 19.)

On August 17, 2020, an immigration judge ("IJ") ordered Petitioner released on bond "pursuant to 8 C.F.R. § 236.1(c)." (*Id.* ¶¶ 3, 20. *See also* Doc. 7-1 at 3 ¶ 11.) The IJ's "written custody order reflects that Petitioner was in removal proceedings and that his custody was governed by the discretionary detention framework of INA § 236." (Doc. 1 ¶ 20.)

"On September 18, 2025, Petitioner reported for a check-in with ICE ERO in Miramar, Florida. After determining that he is an alien who is unlawfully present in the United States, ERO took Petitioner into custody pending resolution of his removal proceedings." (Doc. 7-1 at 4 ¶ 13.) "Petitioner is currently detained by ICE without having received a new, individualized custody determination establishing that he poses a danger to the community or a flight risk sufficient to justify detention under INA § 236(a)." (Doc. 1 ¶ 26.)

Based on these allegations, Petitioner alleges that (1) Respondents lack statutory authority to detain him under INA § 235 and may detain him, if at all, only under INA § 236(a); (2) Respondents violated his due process rights by detaining him without an individualized determination of flight risk or dangerousness; and (3) his summary detention is arbitrary, punitive, and excessive. (*Id.* ¶¶ 27-51.)

## II.    Analysis

After reviewing the petition, the Court issued an order to show cause ("OSC") directing Respondents to explain why Petitioner's detention was not governed by recent decisions from this district, the Seventh Circuit, and the Central District of California concluding that an individual present in the country without admission is detained pursuant to § 1226(a) and thus entitled to a bond hearing. (Doc. 5.) In their response, Respondents contend that Petitioner is properly designated as an arriving alien subject to mandatory detention under 8 U.S.C. § 1225(b). (Doc. 7.) Respondents further contend that Petitioner's release on bond by an IJ in 2020 should not have occurred and that the IJ violated the Board of Immigration Appeals' decision in *Matter of M-S-* by issuing the bond. (Doc. 7 at 4 ["[T]he immigration judge had no authority to release Petitioner on bond if he

1  were detained under Section 1225(b)(1) [so] the proper conclusion is that the immigration
2  judge erred when he ordered Petitioner's release.  In fact, a binding opinion of the Attorney
3  General should have required the immigration judge to deny bond. *Matter of M-S-*, 27 I&N
4  Dec. 509 (A.G. 2019)."].)

5      These arguments are unavailing.  As an initial matter, there is no binding authority
6  as to whether *Matter of M-S-* accurately interprets the relevant statutory provisions and
7  many courts—including the Ninth Circuit in its since-vacated decision in *Padilla v.*
8  *Immigration & Customs Enf't*, 953 F.3d 1134 (9th Cir. 2020)—have concluded that it does
9  not.  Nevertheless, even assuming the IJ *shouldn't* have released Petitioner on bond in
10 2020, the inescapable fact remains that the IJ *did* release Petitioner on bond.  And this is
11 significant for two reasons.  First, there is a line of authority generally suggesting that once
12 an alien is released on bond, the alien is a right to a pre-deprivation hearing before the bond
13 may be revoked.  *See, e.g., J.C.E.P. v. Wofford*, 2025 WL 3268273, *6 (E.D. Cal. 2025)
14 ("[T]he BIA has required that where a previous bond determination has been made by an
15 immigration judge, no change should be made by the DHS absent a change of
16 circumstance.  The requirements of due process, of course, supersede statutory and
17 regulatory authority, and numerous courts have held that the Due Process clause entitles a
18 noncitizen to notice and an opportunity to be heard before his parole or bond is summarily
19 revoked under section 1226(b).") (cleaned up).  Second, the release on bond in 2020
20 occurred after DHS clarified that it was no longer pursuing expedited removal against
21 Petitioner and after the IJ clarified that "Petitioner was in removal proceedings and that his
22 custody was governed by the discretionary detention framework of INA § 236."  (Doc. 1
23 ¶ 20.)  Accordingly, when Petitioner was redetained in 2025, he remained subject to that
24 detention framework.  And as many courts (including this Court) have recently concluded,
25 there is a right to a bond hearing under the framework.  *See, e.g., Echevarria v. Bondi*, 2025
26 WL 2821282 (D. Ariz. 2025).

27     Other courts have concluded, under nearly identical facts, that an alien in
28 Petitioner's situation is entitled to a bond hearing.  Just a few days ago, in *Ahmed v. Rhoney*,

- 3 -

2026 WL 262553 (W.D.N.Y. 2026), the court explained:

> [R]esolution of Ahmed's request for a bond hearing turns on whether he is detained pursuant to 8 U.S.C. § 1226(a) (as he claims) or 8 U.S.C. § 1225(b)(1)(B)(ii) (as claimed by Respondents in the alternative).  Section 1225(b)(1)(B)(ii) . . . applies to noncitizens stopped at or near the border who make a claim for asylum.  And no question, when Ahmed was first encountered 10 years ago, he was detained pursuant to this provision.
>
> But Ahmed was released on bond by an immigration judge and he has resided in this country for a decade.  The provision allowing for release on bond is 8 U.S.C. § 1226(a).  Respondents do not argue that Ahmed was not released on bond pursuant to § 1226(a).  Instead, they argue that he should not have been released on bond based on . . . *Matter of M-S-*, 27 I&N Dec. 509 (A.G. 2019) . . . .
>
> Setting aside whether *Matter of M-S-* applies retroactively or whether it is a correct interpretation of the statute, it does not support the conclusion that the government can unilaterally re-detain an individual released on bond years later with no individualized hearing or demonstrated change in circumstances.  And even if it did support such a result, Respondents offer no justification for why they took no steps since the issuance of *Matter of M-S-* in April 2019 (almost seven years ago) to revoke Ahmed's bond.  In other words, if *Matter of M-S-* truly operated to nullify Ahmed's release on bond, then he is no different than a non-citizen who is encountered within the interior of the United States after entering without inspection.  And an individual like that would be considered detained under these circumstances pursuant to 8 U.S.C. § 1226(a).  Under no reasonable construction of the facts could Ahmed's arrest in August 2025 be viewed as a continuation of his initial border encounter.

*Id.* at *1-2 (cleaned up).  *See also Da Silva v. Bondi*, 2026 WL 193635, *1 (W.D.N.Y. 2026) ("Alves da Silva was given what is known as a 'credible fear interview' under section 1225(b)(1) and was found to have a credible fear of persecution or torture if returned to his native country, Brazil.  At that point, the government released Alves da Silva on bond and allowed him to live freely in the country for the next nine years—until November 4, 2025— when he was taken back into custody.  The government claims that he now is subject to mandatory detention under section 1225(b)(1)(A) as if its decision to release him on bond

in 2016 had never happened.  This Court disagrees.") (cleaned up); *Loja v. FCI Berlin, Warden*, 2025 WL 3079160, *1-2 (D.N.H. 2025) (concluding, where "CBP initially issued Loja an Expedited Removal order but . . . [then] vacated the Expedited Removal order, . . . charged him with inadmissibility under 8 U.S.C. § 1182(a)(6)(A)(i) . . . [and] released Loja on bond," that "by releasing Loja on bond under § 1226(a), . . . the government failed to reserve its right to treat Loja in the same manner as that of any other applicant for admission to the United States") (cleaned up).

Admittedly, courts are not in full agreement on this issue.  *Paredes Padilla v. Galovich*, 2025 WL 3640960, *4 (W.D. Wisc. 2025) ("Paredes Padilla was apprehended in 2018 near the border, placed into expedited removal proceedings and then transferred into asylum proceedings.  Under § 1225(b)(1)(B)(ii), he should have been detained at that time without bond, but the government apparently didn't comply with the requirement to detain him.  Nevertheless, his removal proceedings were never completed, so § 1225(b)(1)(B)(ii) still mandates his detention.  Paredes Padilla's detention is not unlawful under the INA, so his petition for a writ of habeas corpus will be denied.").  Nevertheless, the Court is persuaded by the reasoning of the courts granting relief in this scenario.

Accordingly,

**IT IS ORDERED** that:

1.      The petition (Doc. 1) is **granted** as to Count One and otherwise denied as moot.

2.      Respondents must provide Petitioner a bond redetermination hearing within seven days or release Petitioner from custody under the same conditions that existed before detention.

3.      Respondents must provide a notice of compliance within three days of releasing Petitioner or providing a bond hearing.

…

….

…

4. Any pending motions are denied as moot and the Clerk of Court shall enter judgment in Petitioner's favor and close this case.

Dated this 4th day of February, 2026.

_____
Dominic W. Lanza
United States District Judge